UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL DENISE DUGGAN,

    Plaintiff,                                Civil Action No. 18-11125

v.                                         HON. DENISE PAGE HOOD
                                              Chief U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Cheryl Denise Duggan[1] ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Dock. #14] be GRANTED and that Plaintiff's Amended Motion for Summary Judgment [Dock. #11] be DENIED.

---

[1] While Plaintiff's application for benefits lists her name as Dugan, the Court uses the spelling found in the caption of the Complaint.

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI on May 12, 2015, alleging disability as of October 1, 2014 (Tr. 154).  After the initial denial of benefits, Plaintiff requested an administrative hearing, held on April 3, 2017 in Livonia, Michigan.  Administrative Law Judge ("ALJ")  Richard L. Sasena presided (Tr. 24).  Plaintiff, represented by attorney Barry Keller, testified (Tr. 28-44), as did Vocational Expert ("VE")  Kelly A. Stroker (Tr. 44-46).  On May 25, 2017, ALJ Sasena found that Plaintiff was not disabled (Tr. 10-19).  On February 8, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on April 9, 2018.

## II.  BACKGROUND FACTS

Plaintiff, born February 7, 1966, was 51 at the time of ALJ Sasena's decision (Tr. 19, 154).  She completed high school and worked previously as a security guard and poll clerk (Tr. 176, 265).  She alleges disability due to back pain, leg weakness, diabetes, and hypertension (Tr. 175).

### A.  Plaintiff's Testimony

*Counsel  prefaced his client's testimony by stating that Plaintiff was unable to work due to the diabetic complication of peripheral neuropathy of the lower extremities (Tr. 27-28).*

Plaintiff then offered the following testimony:

She had not worked in the two years before the hearing (Tr. 28).  Her last job before

quitting work was as a security guard at Ford Field (Tr. 28).  She quit because nerve pain of the feet made standing for long periods difficult (Tr. 29).  The pain in her right foot was slightly worse than the left (Tr. 41).  On a scale of one to ten, the foot pain was at "seven" on a daily basis (Tr. 42).  Due to back pain, she also experienced problems sitting (Tr. 29).  The back pain was intermittent but on occasion created level "ten" discomfort (Tr. 43).  She had been using insulin for the past eight years and had been using a cane for eight years due to leg weakness (Tr. 29).

      She was unable to stand for more than 10 minutes at a time but could sit for at least 30 minutes (Tr. 30-31).  She was able to walk one block (Tr. 31).  She could lift and carry a gallon of milk for short distances (Tr. 31-32).  She had not held a valid driver's license since losing her license 20 years earlier following a DUI conviction (Tr. 32).  She reduced her alcohol use after the diabetes diagnosis and quit drinking altogether two months before the hearing (Tr. 32).  She had not used marijuana in four months (Tr. 33).  She smoked around a quarter-pack of cigarettes daily (Tr. 33-34).  She lived in a house with her elderly father (Tr. 34).  She received health insurance through the State of Michigan (Tr. 34).  She had been taking Neurontin for nerve pain the past 10 years (Tr. 35).  She coped with foot pain and burning by reclining (Tr. 35).

      Plaintiff was able to care for her personal needs but relied on her father to perform household chores (Tr. 36).  On a typical day, she would first eat breakfast then rest and watch television for the remainder of the day (Tr. 37).  She read but did not engage in hobbies (Tr.

44). She would be able to perform a job requiring primarily sitting, but noted that most non-computer work required standing (Tr. 37). She treated with the same primary care physician for 20 years but had recently changed doctors due to a change in insurance (Tr. 39).

  **B.**  **Medical Evidence**

    **1. Treating Sources**

  In August, 2014, Plaintiff was treated for a cataract of the right eye (Tr. 273-274). Surgical records note that the cataract was removed without complications (Tr. 275). September, 2014 records by Alphonse Ekole, M.D. note a diagnosis of hypertension (Tr. 270). Plaintiff denied musculoskeletal pain or weakness (Tr. 270). Later the same week, Plaintiff sought emergency treatment for left leg weakness after falling (Tr. 280). Treating records note her report of bilateral foot numbness (Tr. 280). She reported drinking a half pint of liquor on a daily basis (Tr. 280). A CT of the lumbar spine was unremarkable (Tr. 282, 328). An MRI of the lumbar spine was negative for spinal canal stenosis (Tr. 283, 287, 289). Plaintiff declined an offer of inpatient detox therapy (Tr. 287).

  Dr. Ekole's records from the following month note that Plaintiff was doing physical therapy (Tr. 337). Plaintiff demonstrated edema of the lower extremities but normal motor strength in all extremities (Tr. 338). A neurological examination was normal (Tr. 338). Dr. Ekole's June, 2015 records state that the diabetes was "very poorly controlled" (Tr. 341). Plaintiff reported mildly painful joints (Tr. 341).

  Dr. Ekole's January, 2016 records note that Plaintiff was "very non-compliant" with

the recommended diabetes treatment (Tr. 371). He noted the condition of hypertension but "otherwise no major . . . concerns" (Tr. 371). A neurological examination was unremarkable (Tr. 372). The following month, Dr. Ekole noted that the diabetes was "without complications" (Tr. 376). March and June, 2016 records note that Plaintiff was prescribed special shoes for diabetic neuropathy (Tr. 356-358). Dr. Ekole's March, 2016 records note a normal neurological examination (Tr. 380). Plaintiff reported "mild" joint pain (Tr. 380). April, 2016 records note that Plaintiff's feet were "in very good condition" without visible defects (Tr. 360). Dr. Ekole's June, 2016 records note that Plaintiff was discharged as a patient in April, 2016 after urine testing was positive for cocaine (Tr. 387, 424). Records from the same month note normal motor strength and a normal sensory examination (Tr. 388). Plaintiff reported the diabetic side effect of hypoglycemia (Tr. 392).

In October, 2016, Dr. Ekole completed a residual functional capacity assessment, finding that Plaintiff was unable to work due to poorly controlled diabetes, an unsteady gate, frequent falls, and chronic joint pain (Tr. 347). He noted that Plaintiff had undergone physical and occupational therapy (Tr. 348). He found that Plaintiff was limited to standing for one hour and sitting for four to six hours in an eight-hour workday (Tr. 348). He found that Plaintiff was limited to walking 10 minutes at a time and required time to recline each day (Tr. 349). He limited Plaintiff to rare manipulative activity and lifting less than five pounds (Tr. 349). He found that she would experience problems bending, squatting, kneeling, and twisting due to chronic back and leg pain (Tr. 350). He referred to her

condition as "frail" (Tr. 351). Dr. Ekole's notes from the following month state that the conditions of diabetes and hypertension were stable (Tr. 395). Plaintiff was prescribed Neurontin (Tr. 396).

### 2. Consultative and Non-Examining Sources

Plaintiff failed to show for either a physical or psychological consultative examination scheduled by the SSA for November 13, 2015 (Tr. 345-346).

### C.    Vocational Expert Testimony

VE Stroker classified Plaintiff's past work[2] as a security guard as semiskilled and exertionally light and work as a poll clerk, unskilled/sedentary[3]  (Tr. 265). The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and work background:

> [L]imited to light work. Occasional climbing, balancing, stooping, kneeling, crouching and crawling.  Would have [] concentrated [] unprotected heights and moving machinery.[4] No foot controls.  And with those limitations what

---

[2]The ALJ ultimately found that Plaintiff's past work  did not rise to the level of Substantial Gainful Activity for the period under consideration (Tr. 18).

[3]
20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[4]
The bracketed sections represent untranscribable portions of the transcript.  Based on

jobs might exist? (Tr. 45).

The VE responded that the restrictions would preclude Plaintiff's past work but would allow the hypothetical individual to perform the unskilled, light work of an assembler (80,000 in the national economy); inspector (60,000); and packager (60,000) (Tr. 45). The VE stated that the need to use a cane to walk for more than 10 feet, or, the need to change positions from sitting to standing every 15 minutes would not affect the job numbers (Tr. 45). She testified that the above restrictions would also allow for the sedentary positions of inspector (30,000); assembler (50,000); or surveillance monitor (32,000) (Tr. 46). She stated that the need to recline "in excess of two hours" during a regular workday would preclude all competitive employment (Tr. 46). The VE stated that her testimony was not inconsistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 46).

### D. The ALJ's Decision

Citing the medical records, ALJ Sasena found that Plaintiff experienced the severe impairments of "degenerative disc disease; diabetes; and polyneuropathy" but that none of the conditions met or medically equaled impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13). He found that Plaintiff experienced no more than mild

---

the corresponding Residual Functional Capacity ("RFC") found in the administrative decision, the ALJ appears to have stated, in effect, that Plaintiff "must avoid concentrated exposure to unprotected heights and moving machinery . . ." (Tr. 14). Plaintiff argues that the ALJ erred by declining to incorporate Dr. Ekole's October, 2016 findings into the hypothetical question posed to the VE. However, she does not dispute that the limitations found in the RFC were the same posed to the VE.

psychological limitation and that the conditions of alcohol abuse and anxiety were non-severe (Tr. 12-13). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [S]he requires a sit/stand option allowing the opportunity to change positions after 15 minutes; she can only occasionally climb, balance, stoop, kneel, crouch, or crawl; she must avoid concentrated exposure to unprotected heights and moving machinery; she cannot use foot controls; and she needs a cane to walk more than 10 feet (Tr. 14).

Citing the VE's findings, the ALJ found that Plaintiff could work as a assembler, packager, and inspector (Tr. 19, 45).

The ALJ discounted Plaintiff's alleged degree of limitation (Tr. 16-18). He noted that Plaintiff's history of non-compliance with the prescribed diabetes treatment undermined her claims of disability (Tr. 16). The ALJ observed that while Plaintiff alleged disabling neuropathy of the feet, her claims were unsupported by abnormal EMG studies (Tr. 16). He noted that Dr. Ekole observed "normal sensory function" (Tr. 16). He acknowledged a September, 2014 hospitalization following a fall but noted "few documented reports of any follow-up treatment for continuing pain symptoms" (Tr. 16). He noted that an MRI of the lumbar spine showed only mild or inclusive results (Tr. 17). The ALJ discounted Dr. Ekole's October, 2016 assessment, noting that the treatment notes and sporadic treatment record did not support the finding of extreme limitation (Tr. 17).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 1152; 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).   However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly

detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff argues that ALJ Sasena's non-disability determination is not supported by substantial evidence. *Plaintiff's Brief,* 3-5, *Docket #11,* Pg ID 494. Specifically, she contends that the ALJ erred by declining to incorporate Dr. Ekole's October, 2016 assessment of her physical limitations into the hypothetical question posed to the VE. *Id.* at 5 (*citing* Tr. 347-351).

Plaintiff is correct that vocational testimony made in response to a hypothetical question that does not include all of a claimant's relevant limitations does not constitute substantial evidence. *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010); *Varley v. Commissioner of Health and Human Servces*, 820 F.2d 777, 779 (6th Cir. 1987); *see also Teverbaugh v. Commissioner of Social Security*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003)(Roberts, J)(reversible error for ALJ to rely upon unsupported job findings). However, the ALJ is not required to include discredited allegations or evidence in the question to the VE. *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994).

Despite the deference generally accorded a treating physician's opinion for the period under consideration, the ALJ's partial rejection of Dr. Ekole's findings and their omission from the hypothetical question does not constitute grounds for remand.[5] The ALJ provided

---

[5] Under the rules effective Mar. 27, 2017, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims

multiple reasons for according "little weight" to Dr. Ekole's October, 2016 assessment (Tr. 17-18, 347-351). First, he noted that Dr. Ekole's treatment records did not support the finding that Plaintiff was incapable of even sedentary work (Tr. 17). The ALJ observed that while Dr. Ekole stated that Plaintiff was limited to walking for only one hour in an eight-hour workday, the treating records did not show "gait abnormality [], diminished strength, or sensory deficit" (Tr. 18). While Dr. Ekole's assessment states that Plaintiff experienced frequent falls, the ALJ noted that the treating notes contained no indication that she fell on a regular basis (Tr. 18, 347). The ALJ noted that a September, 2014 MRI of the lumbar spine showed only mild degenerative changes (Tr. 18, 283). He noted that none of the medical records supported Dr. Ekole's finding that Plaintiff would be required to recline for long periods during an eight-hour workday (Tr. 18, 349). Likewise, the ALJ observed that none of the treating records supported Dr. Ekole's finding that Plaintiff experienced significant upper extremity limitations (Tr. 18, 349). The ALJ's findings are consistent with my own review of the record.

      ALJ Sasena's rationale for rejecting Dr. Ekole's assessment also complies with the procedural requirements of the "treating physician rule" requiring an ALJ to provide "good reasons" for discounting a treating source opinion. *Biestek v. Commissioner of Social*

---

filed on or after March 27, 2017." *Hancock v. Commissioner of Social Security*, 2017 WL 2838237, at *8 (W.D. Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)). Because current Plaintiff filed her claim well before March 27, 2017, her treating physician's opinion was entitled to deference if not contradicted by other portions of the record. § 404.1527(c).

*Security*, 880 F.3d 778, 785 (6th Cir. 2017). Because the ALJ provided a thorough and well supported discussion of the treating assessment, he did not err in declining to include the rejected findings in his question to the VE. *See Stanley, supra.*

In closing, my recommendation to uphold the ALJ's decision should not be read to trivialize Plaintiff's medical problems. Nonetheless, the ALJ's determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Dock. #14] be GRANTED and that Plaintiff's Amended Motion for Summary Judgment [Dock. #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 22, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 22, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen